### Harriet J. Warren v. Samuel Kerr et al.

1. CONTRACTS—*When to be Enforced by the Courts.*—Where parties
make an agreement in settlement of a controversy between them, and
no reason appears why they should not be bound by it, the courts will
enforce the agreement as made.

**Bill for Relief.**—Appeal from the Circuit Court of Cook County;
the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in the
Branch Appellate Court at the March term, 1900. Affirmed. Opinion
filed January 29, 1901.

MOORE & CREEKMUR, attorneys for appellant.

ROBERT J. KERR, attorney for appellees.

MR. JUSTICE FREEMAN delivered the opinion of the court.
Appellant filed her bill of complaint alleging that appel-

lees Kerr & Barr, while acting as her attorneys in a suit for divorce brought against her husband, came into possession of two notes belonging to her, aggregating $7,800, which they disposed of for their face value to the other defendants, and refuse to account for. It is alleged that said Kerr & Barr became her solicitors in said divorce proceeding under an agreement that they would look to her husband for compensation; that they received from her husband $2,200 for their services therein, being the fee for appellant's solicitors fixed by the trial court, which was in full for their services, according to the terms of their employment; that as such attorneys they came into possession of said notes, which they retained without her consent, and wrongfully. The other defendants are charged with having purchased said notes with knowledge that they were held by Kerr & Barr in trust for appellant.

In reply, appellees Kerr & Barr state that they did act as appellant's solicitors in said divorce proceeding, at which time they received the notes in controversy. They deny, however, that they were to look only to appellant's husband for compensation for their services, and aver that the notes in question were received by them in payment of the balance due for continuous professional service, extending over a period of about six years, for which, by arrangement with appellant, they were to receive $10,000 as compensation. In the divorce proceeding it appears a divorce was granted to appellant's husband; but the court required the husband to pay appellant $70,000, including her solicitors' fees. It is claimed that an increase of $7,800, the amount of the notes in controversy, was obtained by the exertions of said solicitors, after the court had at first fixed the sum at $62,200, including the solicitors' fees of $2,200, allowed by the court for services in that particular case.

The notes in controversy, aggregating $7,800, were given by the husband in the settlement of said decree in the divorce suit, and retained by said appellees, making up, totogether with the said $2,200, the $10,000 to which said appellees claim to have been entitled. The Circuit Court dismissed appellant's bill for want of equity.

It is the theory of appellant's case, as stated by her counsel, that Kerr & Barr had no legal right to compensation for services rendered prior to the divorce suit; that they themselves had so admitted, telling appellant she did not owe them anything. On the other hand, Kerr testifies that he had made no charge at that time because he knew appellant could not pay unless she got something from her husband, and that the fee was therefore contingent; that appellant frequently promised to pay handsomely if her lawyers succeeded in getting anything out of her husband.

In the view we take, it is not necessary to review at length the testimony as to the extent and character of the services claimed to have been rendered to appellant by appellees Kerr & Barr, nor to inquire in detail whether such services were fairly and reasonably worth the sum charged and retained. If it appears from the evidence, as it does, that services were rendered by the said appellees to appellant over a series of years, and that a settlement was finally effected with her husband by which he paid $70,000 for her benefit, and if it further appears that she then agreed to and did deliver to said attorneys, or consent to their retaining, the notes for $7,800, as and for their compensation for services so rendered, and in settlement therefor, we know of no reason appearing in the case why she should not be bound by such agreement. In this view it is unnecessary to inquire under what circumstances or upon what terms said attorneys were first employed, nor whether the amount awarded by the court in the divorce suit was full and adequate compensation for services rendered in that particular suit. The question is, was there a fair settlement between the parties, in pursuance of which said appellees received the notes in question.

Upon this point, while appellant denies that there was any such agreement or settlement, it yet appears from her testimony that when Kerr turned over to her a part of the amount received from her husband under the decree in the divorce suit, he told her that the notes for $7,800 belonged to him for his services; that at her request he allowed her to

take the said notes home with her (as he states, because she wished to show her husband that she had received them), if she would promise to bring them back; that she did take them home, and brought them back the next day and returned them to him.   He gave her also a written agreement to attend to any and all matters required to close up the settlement with her husband under the decree, and in the collection of the notes given appellant in pursuance thereof, and to do what might be necessary to protect her interest in any suit relating to her real estate or succession to the estate of her husband, then a very aged man.   She admits that she retained this paper.   It is true she now denies that she ever actually agreed to such a settlement or consented that Kerr should retain these notes as his fee. But her conduct in returning them to him in pursuance of her promise after having them in her possession, and her subsequent acquiescence for more than four years before filing this bill without any effort to recover possession, together with her acceptance and retention of the agreement for further service in the matter without additional compensation, go far to sustain the claim of said appellees that the notes were allowed them in settlement and payment of their fees.   It may be, as appellant's testimony seems to indicate, that she consented reluctantly to payment of so large a fee.   But that she did so consent is, we think, the only conclusion to be drawn from her own evidence in connection with the conceded facts.

There having been, therefore, a settlement between the parties, by virtue of which appellees Kerr & Barr received the notes in controversy and retained them with appellant's consent in payment of their claims for legal services, such adjustment must be deemed conclusive and binding on appellant.   If it fairly appeared that said appellees, as attorneys for appellant, had made use of the relation to extort from the latter an unjust or unreasonable contract for compensation, a different case would have been presented.   But it appears that in the matter of taking these notes in payment their relations were antagonistic to some extent, said appel-

lees claiming the amount of the notes as fairly earned by them, and appellant acquiescing, reluctantly, but actually, nevertheless. There can be no doubt under the conceded facts that said appellees' services were of very material value to appellant prior to the divorce suit, and while we regard the fee as liberal, yet we can not say it was so excessive as to justify a court of equity in setting aside what appears to have been a deliberate settlement between the parties, with full knowledge of the situation, and liberty of action on the part of appellant to contest the charge if then so disposed.

The judgment of the Circuit Court must be affirmed.